[No. 1817.]

## JAMES PHILLIPS v. THE STATE.

1. DESTRUCTION OF GRASS BY FIRE.—INDICTMENT charging the destruction of
   the grass of another, by setting fire to it, alleged that the offense was
   committed in P. county; that the grass fired was the grass in T. S.'s pasture,
   inside of his inclosure; that the defendant was not the owner of said in-
   closure, and that the defendant set fire to said grass unlawfully and wil-
   fully, and with the intent to destroy it. *Held*, that these allegations set forth
   facts which constitute the offense, and the indictment is sufficient to charge
   the offense of destroying the grass of another by fire. Note, also, the sug-
   gestion in the opinion that, though it was unnecessary to allege the owner-
   ship of the inclosure further than to charge that it was not the property of
   the defendant, that allegation, when practicable, is the better practice.

2. SAME — PRACTICE — PLEADING — OWNERSHIP.— With regard to the allegation
   of ownership, when such an allegation is necessary, the established rule in
   this State is as follows: When one person owns the property, and another
   person has the possession, charge or control of the same, the ownership
   thereof may be proved to be in either. When property is owned in com-
   mon, or jointly, by two or more persons, the ownership may be alleged in
   all or either of them.

3. SAME — EVIDENCE.— PROOF OF POSSESSION merely is sufficient proof of the
   allegation of ownership, and this rule is applicable to all offenses wherein
   allegation and proof of ownership are required.

4. SAME.— PROOF OF OWNERSHIP OR TITLE BY POSSESSION is always made by
   parol testimony, and was properly so made in this case. The State, in this
   case, could be required to prove no more than a possessory title in some
   person other than the defendant, and showing it to be in T. S., the alleged
   owner, *prima facie* the ownership was in him, and not in the defendant;
   and if the defendant had any title to the inclosure, that fact was peculiarly
   within his knowledge, and the burden rested upon him to show it. See the
   statement of the case for evidence *held* competent and sufficient to establish
   the allegations of ownership and that the defendant was not the owner of
   the inclosure.

5. Accomplice Testimony — Charge of the Court. — The evidence in this case discloses that the principal State's witness was a confessed accomplice of the defendant, and tends strongly to show that another State's witness was also an accomplice, inasmuch as he knew of the intended crime before it was committed, and furnished the defendant transportation to the place where the offense was intended to be and was committed. Charging the jury as to the necessary corroboration of accomplices, in order to convict, the trial court, in effect, instructed them that to constitute an accomplice, so as to require corroboration of his testimony, they must believe from the evidence that he participated in the actual commission of the offense. *Held*, error; that the word "accomplice," when applied to evidence, includes not only principal offenders, but accomplices, accessories, and all those who are *particeps criminis;* that it has a broader signification when applied to evidence than it has in article 79 of the Penal Code, which defines an accomplice in crime; that it means a person who either as a principal, accomplice or accessory is connected with the crime by unlawful act or omission on his part, transpiring either before, at the time of, or after the commission of the offense, and whether or not he was present and participated in the crime.

6. Same.— Where, in a prosecution for an offense, the evidence shows that a State's witness, knowing the unlawful intent of the defendant to commit the offense, before it was committed furnished him transportation to the place where the offense was subsequently committed, it is sufficient to fix the *status* of such witness as an accomplice with the defendant in the offense, whether or not he participated in its actual commission, and the jury should be so instructed.

7. Same.— One accomplice cannot be corroborated by another.

Appeal from the District Court of Parker. Tried below before the Hon. A. J. Hood.

The conviction in this case was for unlawfully and wilfully burning the grass in the inclosed pasture of Thomas Stewart, with intent to destroy it. The venue was laid by the indictment in Parker county, and the offense was alleged to have been committed on the 21st day of February, 1884. A term of two years in the penitentiary was the penalty imposed.

Thomas Stewart was the first witness for the State. He testified that he owned a pasture of some three or four hundred acres in Parker county, Texas. He had this pasture fenced in during July, 1882. This fence was composed of four strands of barbed wire, about a foot apart, fastened to posts every thirty feet. There was no blind or plank on the fence. The witness went around his fence on the 18th or 19th day of February, 1884, and knew that the fence was then intact and the grass all right. On or about the 23d day of that same month, the witness learned through some of his neighbors that his fence had been cut and his pasture fired. On examination, he found his pasture fence cut in three different places, and

his pasture fired inside the inclosure in three different places. Two of the cut places in the fence were near together, but not in the same panel. The other cut place was about a quarter of a mile distant from the first two. At each of these places, the four wires were cut down the sides of the posts. The grass inside of the pasture inclosure had been fired at each of these places. In all, about ten acres of grass were burned. The burning was stopped by a piece of ground that had been plowed up some years before, and which at the time was overgrown with weeds.

Witness examined the ground and found the tracks of two horses. These tracks passed into the pasture at one of the two places where the fence cuts were near together, and passed out at the cut place farther up the pasture. Thence they took the public road leading in a northeast direction. These tracks were made by small unshod ponies. Judging from the appearance of the tracks, the ponies entered the pasture in a walk, and went out in a run or gallop.

On his cross-examination, the witness stated that he did not own all of the land lying in the pasture; that the title to some thirty or forty acres was in his father, William Stewart, who, with his wife, the witness's mother, lived with the witness. This land, however, the witness's father had agreed to give him, and the witness was using it in his inclosure as part of his pasture for horses and cattle. Witness's father pastured his stock in that inclosure by the witness's permission. Witness removed his cattle from the pasture some time in January, 1884, and had none in the inclosure at the time the grass was burned. It took the witness the half of one evening to repair the fence at the places where it was cut. He patched the original wire. Witness owned the pasture and the fence. The cutting of the fence and burning of the grass occurred in Parker county, Texas.

Dan Sisk was the next witness for the State. He testified that one night during the year 1884, he could not recall the day or month, he and his brother Mat went to the house of the defendant to go hunting. The defendant had agreed to go hunting any night he was called upon. They rode two small unshod ponies. Witness, his brother Mat and the defendant went hunting. They went to a point behind a field that belonged to an old man named Walters. Here the dogs caught a skunk, and the party built a fire of brush and fragments of wood. At this fire some one of the party other than witness proposed to cut Stewart's fence and fire his grass. Witness's brother Mat refused to go. The party returned to defendant's house, about one and a half miles from where they built

the fire spoken of, secured an old drawing knife, and repaired to Stewart's pasture to cut the fence and burn the grass. Mat refused to join in the cutting and burning, but lent defendant the pony he had ridden that night. When defendant and witness reached the pasture fence, defendant dismounted, handed his bridle rein to witness to hold, and took the old drawing knife. Witness then heard a hacking noise, and presently he and defendant rode into the pasture, and the defendant, with matches, fired the grass in two places, and the witness fired it in one. They then rode in a gallop towards the fence. Witness again heard the hacking noise, and presently he and defendant rode out of the pasture and back to defendant's house, some three miles away.

On reaching defendant's house they found Mat Sisk in bed, asleep, and they retired. None of defendant's family were at home that night. When witness and defendant started to Stewart's pasture, they left the dogs at the defendant's house, for fear they would make a noise. Witness admitted that, in talking to his uncle Henry Sisk, he denied having any knowledge of the cutting of the fence or burning of the grass. On arriving at the defendant's house after the completion of the enterprise, the defendant told Mat Sisk that he had cut Stewart's fence and fired his grass. Witness was in the sixteenth year of his age. Mat Sisk, the witness's brother, both at the fire behind Walters's field and afterwards at the defendant's house, refused absolutely to have anything whatever to do with the cutting of the fence or firing of the grass.

Mat Sisk, testifying for the State, corroborated his brother, the last witness, in detail up to the departure of Dan Sisk and the defendant to cut Stewart's fence and fire his grass. He stated further that, on their return, Dan Sisk and defendant waked witness up, and told him that they had cut the fence and fired the grass. Witness denied to his uncle Henry Sisk that he knew anything of the affair. He denied such knowledge to other parties. He told no one about it until he ascertained that his brother Dan had told everybody, and it was the deliberate opinion of the witness that, in telling it, his brother Dan acted "dogged mean." Witness refused to go and participate in the cutting and burning, not because he was sick, but because he did not want to be mixed up in the matter.

William Walters testified, for the defense, that, on the 13th day of February, 1884, he noticed that Stewart's pasture fence was down in a place or two. At one place a post seemed to have fallen over. The grass was not then burned.

The State, in rebuttal, introduced W. Phillips, who testified that he was in no way related to the defendant. Early in the year 1884 witness went to Balch's to have some blacksmith work done, and returned to Finlay's house, where he passed the night. During the night some time Finlay waked the witness up and showed him the fire in Stewart's pasture. This, the witness thinks, occurred in February, 1884. Returning to his home next morning, witness passed by and examined Stewart's fence. He found it cut at one place near the corner. He did not see the burned grass.

William Stewart, in rebuttal, testified, for the State, that the prosecuting witness was his son. His son owned the fence cut and the pasture in which the grass was burned. The cutting of the fence and burning of the grass occurred some time between the 18th and 23d days of February, 1884. Of the two or three hundred acres in the pasture, the witness owned thirty or forty. Witness had never deeded these thirty or forty acres to his son, nor had he given them to him. Witness, whenever he wanted to, turned his stock in this pasture, and he did this without asking his son's permission. The pasture was known as the pasture of the witness's son, Thomas Stewart. The defendant did not own a foot of land in that pasture.

The questions discussed in the opinion were raised in the motion for new trial.

*McCall & McCall,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WILLSON, JUDGE. I. The indictment is sufficient. It almost literally follows the language of the statute, in charging the offense. It alleges that the offense was committed in Parker county, and that the grass fired was the grass in Thomas Stewart's pasture inside his inclosure, and that the defendant was not the owner of said inclosure, and that the defendant set fire to said grass unlawfully and wilfully, with the intent to destroy it. These allegations set forth the facts which constitute the offense of which the defendant was convicted. (Genl. Laws, Spec. Sess., 18th Leg., p. 66.) It was perhaps unnecessary to allege the ownership of the inclosure further than to allege that it was not the property of the defendant. (*State* v. *White,* 41 Texas, 64.) But it is no objection to the indictment that it alleges ownership in Thomas Stewart; in fact, we think it is the better form, when it is practicable, to insert an allegation of ownership, for the purpose of more particularly identifying the offenses. Such seems

to be the approved practice in similar cases. (1 Bish. Cr. Proc., §§ 571–581; 2 Id., § 36; Bish. on Stat. Cr., § 443; 1 Whart. Cr. Law, § 841.)

II. ·Our statute settles the question as to the allegation of ownership whenever it is necessary that such allegation should be made. "Where one owns the property, and another person has the possession, charge or control of the same, the ownership thereof may be proved to be in either. When property is owned in common, or jointly, by two or more persons, the ownership may be alleged in all, or either of them." (Code Crim. Proc., art. 426.)

III. Proof of possession merely is sufficient proof of the allegation of ownership, and this rule is applicable to all offenses wherein allegation and proof of ownership are required. (*May* v. *The State*, 15 Texas Ct. App., 430.)

IV. In cases like this, proof of ownership may be made by parol. Ownership or title by possession is always made by parol testimony. In general, where the title in fee to land is necessary to be proved, it cannot be proved by parol, but to this general rule there are exceptions. In this case, it matters not who owned the fee in the land, so that it was shown that the defendant did not own it. A mere possessory title in some other person than the defendant was all that the prosecution was required to prove, and such title was proved to be in Thomas Stewart, the alleged owner. This proof being made, *prima facie* the ownership of the inclosure was in Stewart and not in the defendant, and if defendant had any title to the inclosure, the fact was peculiarly within his knowledge, and the burden rested upon him to show it. (*Jones* v. *The State*, 13 Texas Ct. App., 1.) The rule prescribed in the analogous case of cutting timber on land not one's own, as to proof of ownership, would not be inapplicable in this case. (Code Crim. Proc., art. 700, sub. 4.) We hold that the proof of the allegation of ownership in this case, and of the allegation that the defendant was not the owner of the inclosure, was both competent and sufficient.

V. Dan Sisk, a principal witness for the State, was a confessed accomplice in the crime charged against the defendant. He testified that he was present when it was committed, and was a principal offender with the defendant in its commission. Mat Sisk, another principal witness for the State, was not present at the commission of the crime, but prior to its commission, on the same night, he had full knowledge that Dan Sisk and the defendant were intending to commit it, and furnished the defendant with a horse to ride to the place, some three miles, where the offense was to be and was com-

mitted. If both these witnesses were accomplices, their uncorroborated testimony would not sustain a conviction. Dan Sisk was unquestionably an accomplice, and the evidence tends strongly to show that Mat Sisk was also. It therefore became the imperative duty of the court to instruct the jury explicitly, fully and correctly upon the rules governing accomplice testimony. This duty the court undertook to discharge. Without quoting the charge upon this subject, we will say that in our opinion it is materially erroneous, and was calculated to mislead the jury. The jury are told, in effect, that to make Mat Sisk an accomplice, so as to require his testimony to be corroborated, they must believe from the evidence that he *participated in the actual commission of the offense,*— thereby conveying the impression that he must have been a principal offender, present and acting together with Dan Sisk and the defendant, in the commission of the offense. Under this instruction the jury would most likely conclude from the evidence that Mat Sisk was not an accomplice, although they might be satisfied that he knowingly furnished aid to the defendant for the purpose of enabling him to commit the offense.

It is well settled that the word "accomplice," when applied to evidence, includes not only principal offenders, but accomplices and accessories, and all those who are *particeps criminis.* (*Smith* v. *The State,* 13 Texas Ct. App., 507, and cases there cited.) It has a broader signification in this connection than it has in article 79 of the Penal Code, which defines an accomplice in crime. It means a person who either as a principal, an accomplice or an accessory, is connected with the crime by unlawful act or omission on his part transpiring either before, at the time of, or after the actual commission of the crime, and whether he be present and participating in its commission or not. If Mat Sisk, knowing the unlawful intent of the defendant to commit the crime, aided him in so doing by furnishing him a horse to ride to the place where it was to be committed, he would be an accomplice in the crime, although he did not participate in its actual commission. (Penal Code, art. 86. See *Cook* v. *The State,* 14 Texas Ct. App., 96, for the distinction between principal offenders and accomplices and accessories.) And the jury should have been so instructed by the court. It was a matter of vital importance to the defendant that the law upon this issue should be clearly and correctly explained to the jury, by a full and accurate definition of the word *accomplice* in the charge of the court. There was no testimony tending to connect the defendant with the commission of the offense, except that of the wit-

nesses Dan and Mat Sisk. Their testimony was wholly uncorroborated in the manner required in the case of accomplice testimony. (Code Crim. Proc., art. 741.) If Mat Sisk was an accomplice, the testimony of the State was insufficient to warrant the conviction of the defendant, for one accomplice cannot corroborate another. (*Heath* v. *The State*, 7 Texas Ct. App., 464.) The charge of the court upon this subject was promptly and specifically excepted to by the defendant, and he also requested special instructions intended to correct the error complained of; which were refused.

We have considered other questions presented in the record, but have found no material error in the conviction, except that in the charge of the court, above discussed, and for this error alone the judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Opinion delivered November 19, 1884.]